*Attorney Grievance Commission of Maryland v. Sara Mohamed Samy El-Shall*, AG No. 5, September Term, 2025. Opinion by Biran, J.

**ATTORNEY MISCONDUCT – DISCIPLINE – INDEFINITE SUSPENSION –** Respondent Sara Mohamed Samy El-Shall violated Maryland Attorneys' Rules of Professional Conduct 19-301.3 (Diligence), 19-301.4(a) and (b) (Communication), 19-301.16(d) (Declining or Terminating Representation), 19-308.1(b) (Bar Admission and Disciplinary Matters), and 19-308.4(a) and (d) (Misconduct). These violations arose from Ms. El-Shall's conduct in three client matters, in which she failed to communicate with, and effectively abandoned, her clients. In addition, in connection with Bar Counsel's investigations of complaints filed by the clients, Ms. El-Shall failed to respond to requests for information and failed to comply with a subpoena to appear for a statement under oath. Given these violations and the existence of several aggravating factors, the Supreme Court of Maryland indefinitely suspended Ms. El-Shall.

Circuit Court for Baltimore City
Case No.: C-24-CV-25-007173
Argued: May 4, 2026

IN THE SUPREME COURT

OF MARYLAND

AG No. 5

September Term, 2025

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SARA MOHAMED SAMY EL-SHALL

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Biran, J.

_____

Filed: July 27, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The practice of law can be rewarding in many ways, but often the rewards come with significant costs. A 2016 study based on a sample of 12,825 practicing attorneys showed that attorneys experience substance abuse and mental health issues at a rate much higher than other populations. Depression, anxiety, and stress are also significant problems for attorneys.[1] This attorney grievance case highlights the need for attorneys struggling with substance abuse and other mental health issues to seek assistance promptly.[2] Unfortunately, it also demonstrates the potential consequences of not doing so.

## I

### Procedural History

On August 4, 2025, the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "PDRA") alleging that Respondent Sara Mohamed Samy El-Shall violated the following Maryland Attorneys' Rules of Professional Conduct ("MARPC")[3]: 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.16(c) and (d) (Declining or Terminating

---

[1] *See Studies on Well-Being in the Profession*, THE PRACTICE, March/April 2020, available at https://perma.cc/B7T9-L7M5 (summarizing results of 2016 study conducted by Patrick R. Krill et al. under the auspices of the American Bar Association and the Hazelden-Betty Ford Foundation).

[2] One resource for attorneys who suffer from these types of problems is the Lawyer Assistance Program of the Maryland State Bar Association. *See* www.msba.org/health-and-wellness, available at https://perma.cc/757V-EXDR.

[3] For ease of reference and comparison with our prior opinions, we will refer to the MARPC rules using the numbering of the ABA model rules, as permitted by Maryland Rule 19-300.1(22).

Representation), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct).

This Court designated the Honorable Alan C. Lazerow of the Circuit Court for Baltimore City to serve as the hearing judge. On September 26, 2025, Petitioner served Ms. El-Shall with the PDRA, Petitioner's initial discovery requests, and related documents. Ms. El-Shall did not respond to the PDRA within the 15-day deadline set forth in Maryland Rule 19-724(a), prompting Petitioner to file a Motion for Order of Default on October 15.

On October 16, 2025, the hearing judge signed an Order of Default. The court emailed that order to Bar Counsel and Ms. El-Shall, along with a request that they indicate their availability to attend a virtual meeting with the hearing judge on one of three proposed dates. *See* Md. Rule 19-722(a).[4] The court received an out-of-office response from Ms. El-Shall's email address; Ms. El-Shall never responded substantively to the court's email. On the following day, October 17, the court sent both parties an email containing the login information for a virtual meeting on October 22.

On October 20, 2025, before the Order of Default was docketed, Ms. El-Shall filed an Opposition to Petitioner's Motion for an Order of Default. In her filing, Ms. El-Shall asserted that she "did not intentionally disregard the proceedings" but rather had failed to respond in a timely manner "due to acute mental health challenges." Ms. El-Shall stated that her "forthcoming pleadings will set forth a meritorious defense." On October 22, the

---

[4] Under Maryland Rule 19-722(a), an order designating a judge to conduct a hearing in an attorney grievance case "shall require the judge, not later than 15 days after the date on which an answer is due, and after consultation with Bar Counsel and the attorney, to enter a scheduling order."

Order of Default was docketed. Also on October 22, the court issued a Notice of Default Order. As required under Maryland Rule 2-613(c), the Notice explained that Ms. El-Shall could move to vacate the Order of Default within 30 days of the entry of that Order. The Notice further recited that any motion to vacate "shall state the reasons for the failure to plead, as well as the legal and factual basis for the defense to the claim."[5]

Ms. El-Shall did not attend the October 22 virtual scheduling meeting. Following the meeting, the hearing judge issued a Scheduling Order requiring all discovery to be completed by December 31, 2025, and scheduled an evidentiary hearing for January 14-16, 2026.

On October 23, 2025, the hearing judge filed a letter on the docket that stated, among other things:

> Although the Court may not have granted the Default Motion had it had the benefit of the Opposition when ruling on the Default Motion, the fact remains that the Court granted the Default Motion and the Respondent finds herself in default status. Under Maryland Rule 2-613(d), the Respondent must move to vacate the Order of Default. If she does so, the Court will rule on it in the ordinary course. *See Holly Hall Pubs., Inc. v. County Banking & Tr. Co.*, 147 Md. App. 251, 262-63 (2002) (recognizing that defaults are generally disfavored).
>
> If this case were a train, it would be leaving the station shortly. *See* Rule 2-613(d) (providing thirty days to move to vacate an order of default); Rule 19-727(d) (providing that a merits hearing in an attorney grievance matter "shall be completed within 120 days after service on the attorney"). The Respondent would be wise to hop on before it's too late.

Ms. El-Shall did not file a motion to vacate the Order of Default. On November 24, 2025, Petitioner filed a Motion for Judgment of Default under Maryland Rule 2-613(f).

---

[5] *See* Md. Rule 2-613(d).

3

Additionally, Petitioner filed a Motion for Sanctions under Maryland Rule 2-433 after Ms. El-Shall did not respond to Petitioner's discovery requests. The hearing judge granted both motions. As a result, the hearing judge entered a default judgment against Ms. El-Shall; ordered that the averments in the PDRA be deemed admitted; and precluded Ms. El-Shall at the evidentiary hearing from introducing any documents, calling any witnesses, presenting any evidence or testimony that contradicted the facts established by the PDRA, or testifying to any matter other than any alleged mitigation.

The evidentiary hearing went forward on January 14, 2026. Ms. El-Shall did not appear for the hearing. Petitioner called no witnesses but introduced five exhibits. The hearing judge issued findings of fact and conclusions of law on January 22, 2026.

## II

## The Hearing Judge's Findings of Fact

The hearing judge found that Petitioner established the following facts by clear and convincing evidence based on the PDRA's factual averments and on information contained in the exhibits that Petitioner introduced at the evidentiary hearing.

### Ms. El-Shall's Practice

Ms. El-Shall was admitted to the Maryland Bar on June 19, 2013. At all times relevant to this case, Ms. El-Shall maintained an office for the practice of law in Baltimore City. Ms. El-Shall's area of practice was workers' compensation.

### Representation of Stacey Wisniewski

In November 2022, Stacey Wisniewski retained Ms. El-Shall to represent her in a workers' compensation matter after terminating her prior attorney due to communication

4

concerns. Initially, Ms. Wisniewski believed Ms. El-Shall's communication with her was good.

However, communication issues soon arose. On January 2, 2023, Ms. Wisniewski emailed Ms. El-Shall with questions about her case; Ms. El-Shall never responded. On January 6, 2023, Ms. Wisniewski followed up by email, and on January 9 and 11, Ms. Wisniewski followed up by phone. Ms. El-Shall did not respond to these communications. Ms. Wisniewski followed up again on January 16, leading Ms. El-Shall's assistant to schedule a telephone meeting between Ms. El-Shall and Ms. Wisniewski for January 20. Without notice, Ms. El-Shall failed to attend that meeting and did not follow up.

On January 23 and 31, 2023, Ms. Wisniewski sent Ms. El-Shall additional emails. On January 31, Ms. El-Shall's assistant emailed Ms. Wisniewski, apologizing for the lack of communication and asking to schedule a call for later that day. Due to an apparent issue with Ms. Wisniewski's email, Ms. Wisniewski's response to this email was not sent, and no meeting occurred.

On February 15, 2023, Ms. Wisniewski received a letter from Ms. El-Shall, to which Ms. Wisniewski responded with several questions. Ms. El-Shall did not respond to that email. Ms. Wisniewski attempted to follow up by email again on February 27 and March 6; Ms. El-Shall did not reply until March 16.

Between March 16 and May 3, 2023, Ms. El-Shall and Ms. Wisniewski exchanged several emails about scheduling Ms. Wisniewski's independent medical examination. Ms. El-Shall also informed Ms. Wisniewski that her hearing before the Maryland Workers'

5

Compensation Commission (the "WCC") had been rescheduled from May 15 to July 18, 2023.

Between May 27 and July 14, 2023, Ms. Wisniewski sent Ms. El-Shall several emails without receiving a response. On July 17, the day before her WCC hearing, Ms. Wisniewski contacted Ms. El-Shall about preparation needed for the hearing. Ms. El-Shall's assistant scheduled a preparation call for that evening at 5:45 p.m. Ms. El-Shall did not call Ms. Wisniewski at the appointed time. Ms. Wisniewski emailed Ms. El-Shall about the meeting at 6:12 p.m., and Ms. El-Shall rescheduled the call for 7:00 p.m. However, Ms. El-Shall did not call at 7:00 p.m., instead texting Ms. Wisniewski to ask about having a call the following morning. Ms. El-Shall failed to call Ms. Wisniewski in the morning.

Ms. El-Shall and Ms. Wisniewski met in person for the first and only time on the morning of the WCC hearing (July 18, 2023). Ms. El-Shall prepared Ms. Wisniewski for the hearing in the building lobby. At the hearing, Ms. Wisniewski received a settlement and was ordered to obtain a functional capacity evaluation. Ms. El-Shall received 20 percent of Ms. Wisniewski's $40,000 settlement.

Between September 23 and December 20, 2023, Ms. Wisniewski sought updates on her case three times without response. On December 20, Ms. Wisniewski received an out-of-office email stating that Ms. El-Shall was on medical leave. On December 25, Ms. El-Shall's assistant informed Ms. Wisniewski that another attorney, Aaron Schwartz, would handle her case. On March 1, 2024, Ms. Wisniewski emailed Mr. Schwartz and Ms. El-Shall. Ms. El-Shall replied that she would call Ms. Wisniewski, but never did. Ms. Wisniewski emailed Ms. El-Shall with questions on March 6 and 8. Ms. El-Shall answered

the second email only by providing a requested fee report; she did not answer any of Ms. Wisniewski's questions. The final contact between Ms. El-Shall and Ms. Wisniewski was on May 31, 2024, when Ms. Wisniewski contacted Ms. El-Shall and expressed concerns about the lack of communication.

On June 28, 2024, Ms. Wisniewski filed a complaint with Petitioner. Bar Counsel sent letters to Ms. El-Shall on July 2 and August 13, requesting a response to the complaint by July 24 and August 27, respectively. Bar Counsel's investigator, Jason Bogue, emailed Ms. El-Shall on September 13 and 18 at four email addresses, requesting that Ms. El-Shall contact him. On September 19, Ms. El-Shall replied to Mr. Bogue by email:

> Dear Mr. Bogue,
>
> My apologies for the delay in responding. This is my first day back in the office this week. I have received the letter from [Assistant Bar Counsel] dated August 13, 2024, enclosing the complaint and attachments and am in the process of responding and compiling any relevant documentation to attach in my response. I recognize that I am well beyond the August 27, 2024, deadline and sincerely apologize for the delay. Initially, I overlooked the extensive attachments, and it is taking me longer to go through everything than I anticipated. Again, I know that I should have contacted Bar Counsel to request additional time/provide an explanation. I believe I would be in a better position to discuss this matter after thoroughly going through the file and responding and believe I will be able to do so by Monday, September 23, 2024 (I will try to have it completed by tomorrow) and will give you a call after sending if that is acceptable.
>
> Thank you for your time and attention to this matter.
>
> Best regards,
> Sara El-Shall

On September 25 and 27, 2024, having not received the promised response, Mr. Bogue emailed Ms. El-Shall. On September 30, Mr. Bogue left Ms. El-Shall a voicemail on two phone numbers listed for her in the Attorney Information System ("AIS"). Ms. El-

7

Shall emailed Mr. Bogue on October 2, explaining that she had been sick with the flu and a migraine, and would send the response later that evening. Ms. El-Shall did not do so.

On October 7, Ms. El-Shall again emailed Mr. Bogue:

Dear Mr. Bogue,

Hope all is well. I have been struggling with depression and anxiety especially with this investigation and under the care of a therapist and physician I again apologize for the delay, but will have my response to you by Tuesday, October 8th.

Ms. El-Shall did not send the promised response.

On October 16, 2024, Bar Counsel docketed the matter for further investigation and emailed Ms. El-Shall notice that she had until October 30, 2024 to respond. In the email, Bar Counsel stated: "That is the final deadline. Should you not respond, Bar Counsel will consider that you knowingly fail[ed] to cooperate with the investigation and take the appropriate action."

On November 4, 2024, Mr. Bogue again emailed Ms. El-Shall, requesting a Zoom interview regarding Ms. Wisniewski's complaint and an additional complaint.[6] Ms. El-Shall did not respond. On November 8, Mr. Bogue attempted to call Ms. El-Shall at both phone numbers listed in AIS, leaving voicemails requesting that Ms. El-Shall contact him, but received no response. On November 18, Mr. Bogue emailed Ms. El-Shall again requesting to schedule an interview. Mr. Bogue received an out-of-office email stating that Ms. El-Shall would return on November 20. Ms. El-Shall did not respond to this email.

---

[6] The additional complaint was the complaint filed by De'Errick'A Hawks, discussed below.

On December 3, 2024, Mr. Bogue went to Ms. El-Shall's office address. The receptionist indicated that Ms. El-Shall was not in the office. Later that day, Mr. Bogue went to Ms. El-Shall's home address. In his Investigative Activity Report, Mr. Bogue recounted what happened next:

> Once at this location, the Respondent answered the front door. I inquired with the Respondent if she was Ms. El-Shall. The Respondent stated that she was not. I then informed the Respondent that I knew she was Ms. El-Shall. The Respondent then shut the front door. I then stated through the closed door that I was an Investigator with the Attorney Grievance Commission, and I knew it was her because I have a copy of her MVA record with a photograph.

> The Respondent then opened the front door. I advised the Respondent I was the Investigator she had previously emailed with about the listed complaint, and she had never provided a response. The Respondent stated, "I'm Sorry".

During this interaction, Ms. El-Shall acknowledged that she had a copy of Ms. Wisniewski's complaint. Mr. Bogue provided Ms. El-Shall with the additional complaint and a copy of the letter accompanying that complaint. Mr. Bogue informed Ms. El-Shall that if she did not respond to Bar Counsel within seven days with respect to both complaints, Bar Counsel would subpoena her to provide a statement under oath. Ms. El-Shall did not respond further to Bar Counsel.

On December 12, 2024, Bar Counsel issued a subpoena for Ms. El-Shall to appear for a statement under oath on January 22, 2025, and sent it to Ms. El-Shall by email and certified mail. On January 13, 2025, Mr. Bogue emailed Ms. El-Shall and left voicemail messages to confirm her appearance. Ms. El-Shall neither responded to the communications nor appeared for the statement under oath. Bar Counsel attempted to call and email Ms. El-Shall regarding her failure to appear, but Ms. El-Shall did not respond.

9

The hearing judge found that Ms. El-Shall "has never engaged meaningfully with or provided any documentation to Bar Counsel regarding [Ms. Wisniewski's] complaint."

*Representation of De'Errick'A Hawks*

On March 21, 2024, De'Errick'A Hawks retained Ms. El-Shall to represent her with respect to a workers' compensation claim. After Ms. Hawks signed a retainer agreement, Ms. El-Shall had no further communication with Ms. Hawks; however, Ms. El-Shall did file a claim with the WCC on behalf of Ms. Hawks.

In May 2024, Ms. Hawks learned that her employer's attorney required her to be seen by the employer's doctor. Ms. Hawks attempted to call, email, and text Ms. El-Shall, but received no response. Ms. Hawks then called the doctor's office to schedule the appointment but was told that only her attorney could do so. Because she could not reach Ms. El-Shall, Ms. Hawks was unable to schedule the appointment. As a result, the WCC rescheduled Ms. Hawks's original July 2024 hearing to October 2024. Ms. Hawks learned that the WCC had postponed her hearing after the WCC contacted her; Ms. El-Shall never contacted her about the postponement.

Ms. Hawks continued to try to contact Ms. El-Shall through the summer of 2024, but received no response. Eventually, Ms. Hawks was referred to another attorney, Robert Gordon, whom she retained in October 2024 to take over her case. Mr. Gordon contacted Ms. El-Shall, who immediately sent him Ms. Hawks's case file. With Mr. Gordon's assistance, Ms. Hawks settled her claim in December 2024. Mr. Gordon attempted to contact Ms. El-Shall to determine the division of fees, but Ms. El-Shall never responded.

10

On October 10, 2024, Ms. Hawks filed a complaint with Petitioner. On October 18, Bar Counsel emailed the complaint to Ms. El-Shall, requesting a response by November 8. In addition, on November 4, Mr. Bogue attempted to schedule a Zoom interview by emailing Ms. El-Shall at three different addresses, but received no response.

On December 12, 2024, Bar Counsel docketed Ms. Hawks's complaint for further investigation and sent Ms. El-Shall a Docket Notice by email and certified mail to her home address. Bar Counsel received an out-of-office reply, stating, "Greetings, I am currently out of the office and will return Friday, December 13, 2024. I will respond to your message upon my return. Thanks! Sara El-Shall." Ms. El-Shall did not respond to Bar Counsel.

On December 12, 2024, Bar Counsel issued a subpoena for Ms. El-Shall to appear for a statement under oath on January 22, 2025, and sent it to Ms. El-Shall by email and certified mail. On January 13, 2025, Bar Counsel staff emailed Ms. El-Shall and left voicemail messages to confirm her appearance. Ms. El-Shall did not respond to the communications and did not appear for the statement under oath. Bar Counsel staff attempted to contact Ms. El-Shall by phone and email regarding her failure to appear, but Ms. El-Shall did not respond.

The hearing judge found that Ms. El-Shall "has never engaged with or provided documentation to Bar Counsel regarding [Ms. Hawks's] complaint."

*Representation of Marquisha Lajuan Jackson*

On May 15, 2023, Marquisha Jackson retained Ms. El-Shall to represent her in a workers' compensation matter. Ms. El-Shall held an initial phone consultation with Ms. Jackson. Afterwards, they communicated by email, phone, and text.

11

On October 9, 2024, Ms. El-Shall texted Ms. Jackson, advising that her WCC hearing had been postponed and that she would email Ms. Jackson with a settlement offer. On October 31, Ms. Jackson emailed Ms. El-Shall that the WCC was waiting for Ms. El-Shall to send Ms. Jackson the settlement paperwork. Ms. El-Shall replied that she would provide the paperwork to Ms. Jackson that same day but failed to do so. Ms. Jackson followed up with Ms. El-Shall by email on November 1 and 4, but Ms. El-Shall did not respond.

On November 20, 2024, Ms. Jackson emailed and texted Ms. El-Shall a notarized letter terminating her services. Ms. El-Shall did not respond to Ms. Jackson. On December 3 and 5, 2024,[7] Ms. Jackson emailed Ms. El-Shall, asking her to withdraw from the case, but Ms. El-Shall did not respond. The hearing judge found that Ms. El-Shall did not withdraw from the case and that "Ms. Jackson was unable to hire a new lawyer, apparently because [Ms. El-Shall] had not withdrawn."

In early December 2024, Ms. Jackson filed a complaint with Bar Counsel. On December 4, Bar Counsel emailed the complaint to Ms. El-Shall and the following day sent it by certified mail to her home address. The letter requested that Ms. El-Shall provide a response and any relevant documents by December 10. After receiving no response, on December 12, Bar Counsel docketed the complaint and sent it to Ms. El-Shall by email and certified mail to her home. Bar Counsel received an out-of-office reply from Ms. El-Shall's

---

[7] The hearing judge's findings of fact contain a typographical error concerning the timing of these emails, mistakenly referring to them as having been sent on December 3 and 5, **2025**, instead of the actual dates of December 3 and 5, **2024**.

email, indicating she was away and would return the next day. Also on December 12, Bar Counsel issued a subpoena for Ms. El-Shall to appear on January 22, 2025, to provide a statement under oath. The subpoena was sent by email and certified mail to Ms. El-Shall's home address.

On January 13, 2025, Bar Counsel staff emailed Ms. El-Shall and left voicemails to confirm her appearance for the statement under oath. Ms. El-Shall did not respond and did not appear for the statement under oath.

On January 22, 2025, Bar Counsel staff called and emailed Ms. El-Shall regarding her failure to appear, but Ms. El-Shall did not respond.

The hearing judge found that Ms. El-Shall "has never engaged with or provided documentation to Bar Counsel regarding [Ms. Jackson's] complaint."

## III

## The Hearing Judge's Conclusions of Law

We now summarize the hearing judge's conclusions of law.

### Rule 1.3 - Diligence

The hearing judge concluded that Ms. El-Shall displayed a lack of diligence, in violation of Rule 1.3, in the Wisniewski, Hawks, and Jackson matters by "repeatedly failing to respond to client communications" and by "failing to advance each of the … matters[.]" In the Wisniewski matter, Ms. El-Shall would "fall off the radar for months on end," only responding to Ms. Wisniewski after she attempted to contact Ms. El-Shall several times. Additionally, Ms. El-Shall failed to attend multiple scheduled preparation meetings the day

13

before Ms. Wisniewski's WCC hearing, only meeting with her in the building lobby on the morning of the hearing.

The hearing judge found that, in the Hawks matter, Ms. El-Shall failed to communicate with Ms. Hawks – despite Ms. Hawks's repeated attempts to contact her by email, text, and phone – after Ms. Hawks signed the retainer agreement. While Ms. Hawks ultimately settled her case, she did so only after engaging a different attorney.

The hearing judge found that, in the Jackson matter, Ms. El-Shall ignored several communications from Ms. Jackson regarding settlement paperwork. Additionally, the hearing judge found that Ms. El-Shall failed to respond to Ms. Jackson's notarized letter and subsequent emails terminating her representation and requesting that Ms. El-Shall withdraw from the case.

### *Rule 1.4 - Communication*

The hearing judge concluded that Ms. El-Shall violated Rules 1.4(a) and (b) in the Wisniewski, Hawks, and Jackson matters for the same reasons that he concluded she violated Rule 1.3.

### *Rule 1.16 - Declining or Terminating Representation*

The hearing judge concluded that Ms. El-Shall violated Rule 1.16(d) in the Wisniewski, Hawks, and Jackson matters.[8] Regarding the Wisniewski matter, the hearing judge found that Ms. El-Shall "effectively abandoned Ms. Wisniewski after her July 2023

---

[8] Originally, Petitioner charged Ms. El-Shall with violating both Rule 1.16(c) and (d). Petitioner withdrew the Rule 1.16(c) charge at the evidentiary hearing.

WCC hearing." With respect to the Hawks matter, the hearing judge found that Ms. El-Shall never communicated with Ms. Hawks after Ms. Hawks signed the retainer agreement. The hearing judge found "perhaps most troubling related to Rule 1.16(d)" that Ms. El-Shall failed to respond to Ms. Jackson's requests to terminate the attorney-client relationship and to withdraw as her counsel before the WCC.

*Rule 8.1 - Bar Admission and Disciplinary Matters*

The hearing judge concluded that Ms. El-Shall violated Rule 8.1(b) in the Wisniewski, Hawks, and Jackson matters, due to her failure to engage with Bar Counsel in the investigations in each case. With respect to each matter, the hearing judge found that Ms. El-Shall failed to: (1) respond to her clients' complaints as Bar Counsel requested; (2) respond to emails and voicemails seeking to schedule an interview with Bar Counsel; and (3) appear for the January 22, 2025 statement under oath despite a subpoena. In addition, the hearing judge concluded that, "[p]erhaps most troubling, in the Wisniewski matter, after [Mr. Bogue] went to [Ms. El-Shall's] home address, [Ms. El-Shall] denied her identity." Finally, the hearing judge found that Ms. El-Shall failed to "engage[] meaningfully in this litigation, again ignoring the process after representing that a response and defense would be forthcoming." The hearing judge observed that Ms. El-Shall's "pattern of communication with Bar Counsel and the Court matches [her] pattern of communication with her clients – failing to respond for long stretches, apologizing, promising a further response or cooperation, and then nothing."

15

*Rule 8.4 - Misconduct*

The hearing judge concluded that Ms. El-Shall violated Rule 8.4(a) because she violated Rules 1.3, 1.4, 1.16, and 8.1. Additionally, the hearing judge concluded that Ms. El-Shall violated Rule 8.4(d) in the Wisniewski, Hawks, and Johnson matters by: (1) failing to respond to Bar Counsel in each investigation; and (2) "failing to respond to client outreach and otherwise keep clients apprised of the status of their matters."

*Remedial Action Taken by the Attorney*

The hearing judge determined that, given Ms. El-Shall's lack of participation in the disciplinary process, including the proceedings in court after the filing of the PDRA, there was no evidence that Ms. El-Shall took any steps "to remedy her action and inaction."

*Aggravating Factors*

The hearing judge concluded that five aggravating factors are present in this case: (1) a pattern of misconduct; (2) multiple violations of the Rules; (3) bad faith obstruction of the disciplinary proceeding; (4) refusal to acknowledge the wrongful nature of the conduct; and (5) indifference to making restitution or rectifying the misconduct's consequences.

In finding a pattern of misconduct, the hearing judge observed that Ms. El-Shall committed "similar flavors of misconduct" in the three matters over several years. Based on his determination that Ms. El-Shall violated Rules 1.3, 1.4(a) and (b), 1.16(d), 8.1(b), and 8.4(a) and (d), the hearing judge concluded that the aggravating factor of multiple violations of the MARPC was present. The hearing judge found that Ms. El-Shall obstructed the disciplinary proceeding in bad faith by "essentially stonewall[ing] Bar

Counsel's investigation, failing to respond for long stretches, reappearing, and then disappearing again." Finally, the hearing judge concluded that Ms. El-Shall's "fail[ure] to participate meaningfully in these proceedings" provided clear and convincing evidence of her refusal to acknowledge the wrongful nature of the conduct and her indifference to rectifying the misconduct's consequences.

On the other hand, the hearing judge concluded that Petitioner failed to prove by clear and convincing evidence the aggravating factors of: (1) a dishonest or selfish motive; and (2) likelihood of repetition of the misconduct. On the record before the court, the hearing judge was unable to make any findings as to why Ms. El-Shall abandoned her clients, failed to cooperate with Bar Counsel during the investigation of the clients' complaints, and failed to participate in the proceedings before the court. As a result, the hearing judge could not conclude, by clear and convincing evidence, that Ms. El-Shall had a dishonest or selfish motive.

The hearing judge stated that he was "confounded" concerning the aggravating factor of likelihood of repetition of the misconduct. Although Ms. El-Shall's "failure to participate meaningfully in these proceedings" did not give him a "great measure of confidence that she appreciates the seriousness of her conduct or these proceedings," the hearing judge noted this was the first time Ms. El-Shall had faced disciplinary charges. Observing that "the bulk of the caselaw applying this factor has involved attorneys with serial attorney grievance matters," the hearing judge found that "this factor is in equipoise," and determined that Petitioner did not meet its burden to show by clear and convincing evidence that Ms. El-Shall is likely to repeat the misconduct.

*Mitigating Factors*

The hearing judge observed that Ms. El-Shall bore the burden to establish any mitigating factors by a preponderance of the evidence. Because Petitioner did not allege any prior professional discipline, the hearing judge concluded that the mitigating factor of absence of prior attorney discipline was present. However, because Ms. El-Shall failed to participate in the proceedings, the hearing judge concluded that she could not "benefit from any other mitigating factors."

## IV

## Standard of Review

"This Court has original and complete jurisdiction in attorney discipline proceedings and conducts an independent review of the record." *Att'y Grievance Comm'n v. Bonner*, 477 Md. 576, 584 (2022). Where neither party files any exceptions to the hearing judge's factual findings, this Court "may treat the findings of fact as established." Md. Rule 19-740(b)(2)(A).

If a party files exceptions to factual findings, this Court "shall determine whether the findings of fact have been proved by the requisite standard of proof …. The Court may confine its review to the findings of fact challenged by the exceptions." Md. Rule 19-740(b)(2)(B).

"The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous[.]" *Att'y Grievance Comm'n v. Hoerauf*, 469 Md. 179, 207-08 (2020) (citation modified). A factual finding is not clearly erroneous "where there is any competent evidence to support" it. *See Att'y Grievance Comm'n v. O'Neill*, 477 Md. 632,

658 (2022) (internal quotation marks and citations omitted). "We review the hearing judge's conclusions of law without deference." *Hoerauf*, 469 Md. at 208 (quoting *Att'y Grievance Comm'n v. Edwards*, 462 Md. 642, 683 (2019)).

## V

### Discussion

#### A. Ms. El-Shall's Clarifications to the Hearing Judge's Findings of Fact

Although Ms. El-Shall did not participate meaningfully when this case was before the hearing judge, she has since obtained counsel and engaged in the proceedings before this Court. In a written submission filed by counsel, Ms. El-Shall states that she does not except to the hearing judge's findings of fact. However, Ms. El-Shall offers two clarifications to the hearing judge's factual findings. First, Ms. El-Shall points out the typographical error concerning the year of Ms. Jackson's emails to Ms. El-Shall asking Ms. El-Shall to withdraw from Ms. Jackson's case. *See* note 7 above.

Second, Ms. El-Shall asks this Court to take judicial notice that, on February 3, 2025, following Ms. Jackson's request, Ms. El-Shall filed a motion to withdraw her appearance in Ms. Jackson's case, as evidenced by the WCC docket. Based on this information, Ms. El-Shall asserts that "Ms. Jackson was not prevented from retaining another attorney." Ms. El-Shall also points us to WCC docket entries reflecting that, on February 20, 2025, a settlement agreement was filed with the WCC regarding Ms. Jackson's claim,[9] and that the WCC approved the settlement agreement on April 3, 2025.

---

[9] The WCC docket reflects that, as of the date the Settlement Agreement was filed with the WCC, Ms. Jackson was unrepresented.

19

Ms. El-Shall avers that "[t]his information was available for months before Bar Counsel filed [the PDRA] and almost a year before the hearing…. Although by default [Petitioner's] charge in this regard was taken as established, this information was readily available and not subject to any reasonable question of accuracy."

Although we generally confine our review to matters in the record before the hearing judge, we may take judicial notice of facts outside the record before a hearing judge in an attorney grievance case, where appropriate under Maryland Rule 5-201.[10] *See, e.g.*, *Att'y Grievance Comm'n v. Sperling*, 472 Md. 561, 611-12 (2021); *Att'y Grievance Comm'n v. Davy*, 435 Md. 674, 683 n.2 (2013). We shall take judicial notice of the filings in Ms. Jackson's worker's compensation case between February and April 2025 to which Ms. El-Shall has directed our attention.

## B. Ms. El-Shall's Violations of the MARPC

Neither party excepts to the hearing judge's conclusions of law concerning Ms. El-Shall's violations of the MARPC. Based on our independent review of the record, we conclude that Petitioner proved by clear and convincing evidence that Ms. El-Shall violated Rules 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.16(d) (Declining or Terminating Representation), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct).

---

[10] Maryland Rule 5-201(b)(2) allows this Court to take judicial notice of a fact that is "not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

*Rule 1.3 (Diligence)*

Rule 1.3 compels an attorney to "act with reasonable diligence and promptness in representing a client." An attorney can violate this rule "by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, or provide an accounting for earned fees[.]" *Att'y Grievance Comm'n v. Dailey*, 474 Md. 679, 703 (2021) (alteration by the Court) (citations omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Ms. El-Shall violated Rule 1.3 in the Wisniewski, Hawks, and Jackson matters. Ms. El-Shall repeatedly failed to respond to client communications in all three matters. In the Hawks matter, Ms. El-Shall failed to schedule Ms. Hawks's appointment with her employer's doctor, causing the hearing before the WCC to be delayed. In Ms. Jackson's case, Ms. El-Shall's failure to provide settlement paperwork to her client demonstrates a failure to advance her client's cause. In addition, although Ms. El-Shall eventually filed a motion to withdraw as Ms. Jackson's counsel, her failure to do so promptly further delayed the resolution of Ms. Jackson's claim.

*Rule 1.4(a) and (b) (Communication)*

Rule 1.4 states as follows:

(a) An attorney shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule [1.0], is required by these Rules;
>
> (2) keep the client reasonably informed about the status of the matter; [and]

21

(3) promptly comply with reasonable requests for information[.]

…

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

This Rule requires attorneys to "communicate with their clients and keep their clients reasonably informed of the status of their case." *Edwards*, 462 Md. at 699. This Court has noted that "[f]ailing to do so 'prevents the client from making informed decisions.'" *Att'y Grievance Comm'n v. Rossbach*, 485 Md. 563, 595 (2023) (quoting *Edwards*, 462 Md. at 699).

We agree with the hearing judge that, for the same reasons Ms. El-Shall violated Rule 1.3, she also violated Rule 1.4(a) and (b). *See Att'y Grievance Comm'n v. Planta*, 467 Md. 319, 349 (2020) ("We have sustained Rule 1.4 violations when a client tries repeatedly to contact the attorney, but the attorney fails to provide a response."); *see also Att'y Grievance Comm'n v. Karambelas*, 473 Md. 134, 162 (2021) ("Rule 1.4 is violated when an attorney communicates nothing or fails to communicate crucial information to the client regarding the status of a case.").

*Rule 1.16(d) (Declining or Terminating Representation)*

Rule 1.16(d) provides:

Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned

or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

We agree with the hearing judge's conclusion that Ms. El-Shall violated Rule 1.16(d) by effectively abandoning the three clients. *See Dailey*, 474 Md. at 707-08 (upholding hearing judge's conclusion that, when the attorney abandoned her client's case, she "effectively terminat[ed] the representation without giving her client notice"). In the Jackson matter, although Ms. El-Shall filed a motion to withdraw as counsel in February 2025, that does not excuse her significant delay in fulfilling Ms. Jackson's request that she do so.

*Rule 8.1(b) (Bar Admission and Disciplinary Matters)*

Rule 8.1(b) prohibits an attorney, in connection with an attorney disciplinary proceeding, from "fail[ing] to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail[ing] to respond to a lawful demand for information from [a] … disciplinary authority," unless the information is protected by the attorney's obligation to confidentiality under Rule 1.6. "We have consistently held that repeated failures to respond to Bar Counsel's investigative requests can be a violation of [Rule 8.1(b)]." *Att'y Grievance Comm'n v. Kotlarsky*, 453 Md. 469, 480 (2017). Petitioner established through clear and convincing evidence that Ms. El-Shall violated Rule 8.1(b). In all three matters, Ms. El-Shall repeatedly failed to meaningfully respond to Bar Counsel's requests for information.

To the extent the hearing judge also based his conclusion that Ms. El-Shall violated Rule 8.1(b) on Ms. El-Shall's denial of her identity when Mr. Bogue appeared at her home, we disagree with that determination. Ms. El-Shall does not dispute the hearing judge's

factual finding that, when Mr. Bogue first asked her on that occasion if she was Ms. El-Shall, she falsely stated that she was not. However, it does not follow that, in doing so, Ms. El-Shall violated Rule 8.1(b). Assuming that Mr. Bogue's question to Ms. El-Shall constituted a "lawful demand for information from [a] … disciplinary authority,"[11] Ms. El-Shall denied her identity to Mr. Bogue before he identified himself as being affiliated with Petitioner. An attorney does not *knowingly* fail to respond to a lawful demand for information from a disciplinary authority if the attorney does not have reason to believe that the demand is being made by a disciplinary authority.[12]

---

[11] As we observed in *Attorney Grievance Commission v. Cassilly*, "Rule 8.1(b) does not define or otherwise describe what constitutes a 'lawful demand for information from a disciplinary authority.'" 476 Md. 309, 392 (2021) (citation modified). We need not decide whether asking someone who answers the door to a residence if she is a particular person constitutes a "lawful demand for information" within the meaning of Rule 8.1(b). *Cf. id.* at 392-94 (analyzing Maryland Rule 19-712 to determine whether a subpoena to provide a statement under oath is a "lawful demand for information" under Rule 8.1(b)).

[12] In *Dailey*, we concluded that one of the ways the respondent violated Rule 8.1(b) was by evading service of a subpoena issued by Bar Counsel to take the respondent's statement under oath. *Dailey*, 474 Md. at 709. In that case, Bar Counsel first requested that the respondent schedule a statement under oath with their office. *Id.* at 696. Initially, the respondent requested a date after October 10, 2019 to give the statement under oath. *Id.* But after Bar Counsel provided the respondent with three proposed dates, the respondent ceased communications. *See id.* Bar Counsel then issued a subpoena directing the respondent to appear for a statement under oath. A process server attempted to serve the respondent with the subpoena at her office on September 28, 2019. *Id.* A woman who acknowledged having the same first name as the respondent answered the intercom but declined to accept the package when the server asked her to come to the door. *Id.* The respondent insisted that the process server had "the wrong place and the wrong person." *Id.* Unlike *Dailey*, where a hearing judge could infer that the respondent had reason to believe the process server was attempting to serve her at her office with process relating to a disciplinary investigation, we cannot conclude by clear and convincing evidence that Ms. El-Shall had reason to believe that the person who appeared at her home and asked whether she was Ms. El-Shall was affiliated with Petitioner. Notably, after Mr. Bogue identified

Rule 8.4 states:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the [MARPC], knowingly assist or induce another to do so, or do so through the acts of another; [or]

…

(d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney's conduct is "prejudicial to the administration of justice" under Rule 8.4(d) where the attorney fails to respond to client communications or keep their client appraised of their case, and where the attorney repeatedly fails to respond in a timely manner to Bar Counsel's inquiries. *See Edwards*, 462 Md. at 707-08. We agree with the hearing judge that Ms. El-Shall violated Rule 8.4(d) in all three matters.

"An attorney violates Rule 8.4(a) if they violate any other rule of professional conduct." *Att'y Grievance Comm'n v. Yeatman*, 489 Md. 211, 235 (2024). Because we conclude that Ms. El-Shall violated Rules 1.3, 1.4(a) and (b), 1.16(d), 8.1(b), and 8.4(d), she violated Rule 8.4(a) as well.

## C. Aggravating and Mitigating Factors

Next, we determine which aggravating and mitigating factors apply in our determination of the appropriate sanction for Ms. El-Shall's violations of the MARPC. For an aggravating factor to apply, Bar Counsel must establish its existence by clear and convincing evidence. *See, e.g.*, *Att'y Grievance Comm'n v. King*, 491 Md. 485, 515 (2025).

---

himself as such, Ms. El-Shall opened her front door, apologized, and did not continue to deny her identity.

A respondent must prove the existence of a mitigating factor by a preponderance of the evidence. *Id.* at 510.

*Aggravating Factors*

This Court has explained that pertinent aggravating factors in an attorney grievance proceeding include:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MARPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Rossbach*, 485 Md. at 600-01 (citation modified). The hearing judge determined that five aggravating factors are present here: (1) a pattern of misconduct; (2) multiple violations of the MARPC; (3) bad faith obstruction of the attorney disciplinary proceeding; (4) refusal to acknowledge the misconduct's wrongful nature; and (5) indifference to making restitution or rectifying the misconduct's consequences. The hearing judge declined to find the existence of two additional aggravating factors: (1) a dishonest or selfish motive,[13] and (2) likelihood of repetition of the misconduct.

---

[13] Bar Counsel does not except to the hearing judge's failure to find the aggravating factor of dishonest or selfish motive. We see no basis in the record to conclude that Ms. El-Shall acted with such a motive.

Petitioner excepts to the failure of the hearing judge to find the aggravating factor of likelihood of repetition of the misconduct. Ms. El-Shall does not except to the hearing judge's application of aggravating factors. She disagrees with Petitioner's contention that the hearing judge should have found the aggravating factor of likelihood of repetition of the misconduct.

We agree with the hearing judge that Ms. El-Shall displayed *a pattern of misconduct*. In all three matters, Ms. El-Shall failed to communicate regularly with her clients, effectively abandoning them. Furthermore, she failed to meaningfully respond to Bar Counsel's inquiries in all three matters. When she occasionally would respond, promising a forthcoming reply, she repeatedly failed to follow up. These circumstances establish a pattern of misconduct. *See, e.g.*, *Yeatman*, 489 Md. at 236-37 (finding a pattern of misconduct where, in two matters, the attorney failed to communicate with his clients, failed to take basic steps to competently handle both matters, and failed to timely respond to Bar Counsel's letters and requests for documents in connection with the investigations of both matters).

As discussed above, Ms. El-Shall violated Rules 1.3, 1.4, 1.16, 8.1, and 8.4. Thus, she has committed *multiple violations of the MARPC*.

Ms. El-Shall engaged in *bad faith obstruction of the disciplinary proceeding* by failing to respond to Bar Counsel's reasonable requests for information. "[T]his Court has regularly treated repeated failures to respond timely and sufficiently to Bar Counsel's lawful requests as sufficient to satisfy the aggravating factor of bad faith obstruction." *King*, 491 Md. at 516.

27

The hearing judge concluded that the aggravating factor of *refusal to acknowledge the wrongful nature of the conduct* was present based on Ms. El-Shall's "fail[ure] to participate meaningfully in these proceedings." We have found the refusal to acknowledge the wrongful nature of the conduct where attorneys were absent from the disciplinary proceedings. *See, e.g.*, *Att'y Grievance Comm'n v. Thomas*, 440 Md. 523, 557-58 (2014). We sustain the hearing judge's conclusion that the aggravating factor of refusal to acknowledge the wrongful nature of the conduct was present.

We conclude that Ms. El-Shall displayed *indifference to rectifying the misconduct's consequences* by her delay in withdrawing from Ms. Jackson's case before the WCC. Although Ms. El-Shall eventually moved to withdraw as Ms. Jackson's counsel, that does not undo the indifference she displayed prior to that point toward rectifying the consequences of her failure to act with diligence and to appropriately terminate the attorney-client relationship with Ms. Jackson. *See Att'y Grievance Comm'n v. Hecht*, 493 Md. 211, 264-65 (2026) (finding aggravating factor of indifference to making restitution where attorney delayed refunding clients).

Regarding the aggravating factor of *likelihood of repetition of the misconduct,* Petitioner contends that "[t]he facts found by the trial court display [Ms. El-Shall's] complete disregard for her duties as an advocate on behalf of her clients and no indication that [she] has altered her behavior in the years since." Petitioner also relies on this Court's application of this aggravating factor in *Attorney Grievance Commission v. Hamilton*, 493 Md. 42, 59 (2026) (attorney's "continued absence for the duration of this grievance process indicates a likelihood of repetition of such misconduct").

28

Ms. El-Shall disagrees, relying primarily on an evaluation of her mental health performed by Dr. Christiane Tellefsen in March 2026. Dr. Tellefsen is a psychiatrist with extensive experience in attorney grievance matters. In a preliminary report and a subsequent, more detailed report, Dr. Tellefsen opined that Ms. El-Shall suffers from several mental health conditions, including depression, mood disorder, post-traumatic stress disorder, attention deficit disorder, and alcohol use disorder. Dr. Tellefsen is of the opinion that Ms. El-Shall's alcohol abuse and depression caused the misconduct that led to the client complaints, and that Ms. El-Shall's failure to respond to Bar Counsel's inquiries was a manifestation of her psychiatric condition at that time. Dr. Tellefsen opines that Ms. El-Shall previously has demonstrated an ability to manage a law practice while in treatment, and that her prognosis for full recovery is good. Dr. Tellefsen reports that, as of late March 2026, Ms. El-Shall was in the care of a psychiatrist, was being prescribed several medications, and was scheduled to begin therapy with a licensed graduate professional counselor in her psychiatrist's clinic. Although Ms. El-Shall reported to Dr. Tellefsen that she had maintained sobriety for about one year after being discharged from an in-patient alcohol rehabilitation program, she acknowledged to Dr. Tellefsen that she consumed alcohol twice in 2025. Ms. El-Shall told Dr. Tellefsen in March 2026 that she had not drunk any alcohol up to that point in the year.

Dr. Tellefsen was not subject to cross-examination by Petitioner at the evidentiary hearing. Nor did the hearing judge have the opportunity to consider Dr. Tellefsen's reports in reaching his conclusion concerning the likelihood of repetition of misconduct. For these reasons, we do not consider Dr. Tellefsen's reports here.

Nonetheless, like the hearing judge, we cannot conclude by clear and convincing evidence that Bar Counsel proved Ms. El-Shall is likely to repeat the misconduct. The hearing judge found this factor to be "in equipoise," and to us, too, it is a close question. On one hand, Ms. El-Shall's failures with respect to multiple clients and her refusal to participate in the proceedings up through the evidentiary hearing are cause for concern that she is likely to repeat the misconduct. On the other hand, Ms. El-Shall has no prior disciplinary record. In addition, Ms. El-Shall acknowledged in her opposition to the motion for default that she had failed to respond timely to the motion for default judgment. She stated that her failure to do so was "due to acute mental health challenges." She also explained in her letter to Mr. Bogue that she was suffering "with depression and anxiety especially with this investigation and [was] under the care of a therapist and physician[.]" On this record, we cannot conclude that the hearing judge's decision not to find the aggravating factor of likelihood of repetition of the misconduct is clearly erroneous or that clear and convincing evidence supports a determination otherwise.[14] We overrule Petitioner's exception.

---

[14] Although not relevant to our review of the hearing judge's conclusions, we also take note that Ms. El-Shall belatedly has participated in these proceedings. This distinguishes her case from *Hamilton*, where the attorney failed to participate in any of the disciplinary proceedings, including before this Court after the hearing judge issued findings of fact and conclusions of law. *See Hamilton*, 493 Md. at 48-49 (discussing the attorney's waiver of oral argument in this Court by virtue of her failure to submit a notice of intent to appear for oral argument).

30

*Mitigating Factors*

This Court considers the following mitigating factors in determining the appropriate sanction:

> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MARPC; and (14) unlikelihood of repetition of the misconduct.

*Att'y Grievance Comm'n v. Taniform*, 482 Md. 272, 298 (2022) (citation modified).

The hearing judge found only one mitigating factor to apply, given Ms. El-Shall's default below: the absence of prior attorney discipline. Petitioner does not except to this finding. We agree that this mitigating factor is present.

Ms. El-Shall contends that we should consider Dr. Tellefsen's opinions and thereby conclude that Ms. El-Shall has met her burden to demonstrate the existence of two other mitigating factors: (1) personal or emotional problems; and (2) a mental disability or

31

chemical dependency. Alternatively, Ms. El-Shall asks us to remand this case to the hearing judge to allow Ms. El-Shall to present evidence of these and other mitigating factors.[15]

"When, subsequent to the evidentiary hearing … a respondent attorney produces proffered new evidence that may be material to the matter … , [this Court] possesses the discretion to remand the proceedings so that the new evidence may be offered and, if admitted, considered by the hearing judge." *Att'y Grievance Comm'n v. Lee*, 387 Md. 89, 116 (2005). However, this Court typically will not remand to the hearing judge for introduction of evidence that was available to the respondent at the time of the evidentiary hearing. *See Att'y Grievance Comm'n v. James*, 385 Md. 637, 657-59 (2005) (declining to remand case to hearing judge to allow respondent to introduce documents that respondent failed timely to produce in discovery to Bar Counsel).

In arguing for a remand, Ms. El-Shall relies on *Attorney Grievance Commission v. King*. There, the hearing judge found that the attorney had been the victim of domestic violence and therefore found the mitigating factor of personal or emotional problems. *King*, 491 Md. at 513-14. However, the hearing judge in that case did not make any findings concerning the degree to which domestic violence contributed to the attorney's misconduct or whether it was likely to contribute to future misconduct. *Id.* at 514. We stated that, "[i]n a different case, we might be inclined to return this to the hearing judge to make such findings." *Id.* However, because the attorney herself "did not tie the domestic violence she

---

[15] Ms. El-Shall states that, if the case were remanded, she would also present evidence of several other mitigating factors, including: the absence of a dishonest or selfish motive; timely good faith efforts to make restitution or to rectify the misconduct's consequences; character and reputation; and remorse.

suffered to any particular instance of misconduct[,]" but rather "largely denied many of the allegations of misconduct in ways that [were] inconsistent with such an explanation[,]" we concluded that a remand was inappropriate. *Id.*

Ms. El-Shall asserts that her case is the "different case" we envisioned in *King* because, on remand, Dr. Tellefsen's opinions would provide mitigation evidence "that goes to the very heart of this matter." She contends that a remand is particularly appropriate because the mental disability that (in Dr. Tellefsen's opinion) caused the misconduct also prevented Ms. El-Shall from participating in the proceedings before the hearing judge.

Petitioner argues that we should neither remand the case for the hearing judge to consider Ms. El-Shall's belated mitigation evidence, nor find the presence of additional mitigating factors in the first instance ourselves.

As discussed above, Dr. Tellefsen's opinions were not subject to cross-examination by Petitioner during the evidentiary hearing. We refer attorney grievance cases to circuit court judges for evidentiary hearings so that the claims of both Bar Counsel and attorney respondents may be tested through our adversarial system of justice. It would be improper for us to credit Dr. Tellefsen's untested opinions in the first instance.

We also agree with Petitioner that it would be inappropriate on this record to remand the case to the hearing judge. We are not persuaded that Ms. El-Shall was unable to participate in the proceedings before the hearing judge. On October 20, 2025, before the Order of Default was docketed, Ms. El-Shall filed on her own behalf an Opposition to Petitioner's Motion for an Order of Default. In her filing, Ms. El-Shall stated that she "did not intentionally disregard the proceedings. The failure to respond timely was due to acute

33

mental health challenges." In addition, Ms. El-Shall represented that she would be "filing a responsive pleading to [the PDRA] filed August 4, 2025; and Petitioner's subsequent filings including Petitioner's First Set of Interrogatories; Petitioner's First Request for Production of Documents; and Petitioner's First Request for Admission of Facts and Genuineness of Documents." Ms. El-Shall further stated that her "forthcoming pleadings will set forth a meritorious defense" and that "[n]o party will suffer prejudice" if Petitioner's Motion for Order of Default were denied, "allowing the case to be heard on the merits." Ms. El-Shall concluded by "respectfully request[ing]" that the hearing judge: deny Petitioner's Motion for Order of Default; grant Ms. El-Shall "leave to file complete responsive pleadings and supporting documentation"; and "[g]rant such other and further relief as the Court deems appropriate." In short, Ms. El-Shall filed a belated but concise and lucid opposition to the entry of an Order of Default.

What Ms. El-Shall did not know when she filed this Opposition was that the hearing judge had already signed an Order of Default. That Order had not yet been docketed. On October 22, 2025, the court issued a Notice of Default Order. As required under Maryland Rule 2-613(c), the Notice explained that Ms. El-Shall could move to vacate the Order of Default within 30 days of the entry of that Order. The hearing judge filed a letter on the docket on October 23 that stated, among other things: "Although the Court may not have granted the Default Motion had it had the benefit of the Opposition when ruling on the Default Motion, the fact remains that the Court granted the Default Motion and the Respondent finds herself in default status." After reiterating that, under Maryland Rule 2-613(d), Ms. El-Shall was required to move to vacate the Order of Default, the hearing judge

34

admonished Ms. El-Shall: "If this case were a train, it would be leaving the station shortly…. The Respondent would be wise to hop on before it's too late." Ms. El-Shall did not do so.

Depression, anxiety, substance abuse, and other mental health-related conditions correlate with increased levels of shame. *See* Brian Lawlor et al., *The Harming Power of Shame*, BRIT. J. PSYCHIATRY, NOV. 5, 2025, at 3, available at https://perma.cc/DBE8-Z9GP. When a person experiences shame, social withdrawal and absenteeism commonly result. *Id.*; *see also* Jeff Elison et al., *Investigating the Compass of Shame: The Development of the Compass of Shame Scale*, 34 SOC. BEHAV. & PERSONALITY: INT'L J. 221, 222-23 (2006) (describing withdrawal and avoidance as two common reactions to shame). Thus, it would not be surprising that an attorney who experiences shame incident to depression and substance abuse would find it difficult to participate in disciplinary proceedings, despite the prospect of facing sanctions.

We can imagine a case where an attorney is so incapacitated by mental health or substance abuse problems that they are completely unable to participate in an evidentiary hearing on disciplinary charges. The record does not reflect that this is such a case. We have no reason to disbelieve Ms. El-Shall's statement in her October 2025 filing that she had been experiencing acute mental health challenges. Yet, Ms. El-Shall demonstrated with the one filing she submitted that she had the wherewithal to participate to some degree in the disciplinary proceedings as early as October 2025. The evidentiary hearing went forward on January 14, 2026, without Ms. El-Shall in attendance. On February 24, 2026, counsel for Ms. El-Shall entered his appearance in this case. Ms. El-Shall has not

35

sufficiently explained why she was able to retain counsel by February 2026 but not in time for counsel to represent her at the evidentiary hearing or in time to file a motion to vacate the Order of Default by late November 2025. To the contrary, the series of events in this case suggests that, despite the acute mental health challenges to which she referred in her filing, Ms. El-Shall could have participated in the evidentiary hearing, in full or at least in part, through counsel or by representing herself.

In addition, as discussed below, even if we assume that the hearing judge would find that the mitigating factors of personal or emotional problems and mental disability or chemical dependency are present, it would have no effect on our determination of the appropriate sanction. For all these reasons, we decline to direct a remand to allow Ms. El-Shall to introduce mitigation evidence.

In sum, we conclude that the mitigating factor of absence of prior attorney discipline applies in this case. We determine that the following aggravating factors are present: (1) a pattern of misconduct; (2) multiple violations of the MARPC; (3) bad faith obstruction of the attorney disciplinary proceeding; (4) refusal to acknowledge the wrongful nature of the conduct; and (5) indifference to rectifying the misconduct's consequences.

### D. Sanction

In attorney grievance cases, "we select a sanction with the purpose of protecting the public and deterring future misconduct, not punishing the attorney." *King*, 491 Md. at 509. In doing so, "[w]e consider a variety of factors, including the rules that were violated, the mental state of the attorney, the injuries, if any, caused by the attorney's misconduct, and the relevant aggravating and mitigating factors." *Taniform*, 482 Md. at 316.

Petitioner asserts that Ms. El-Shall should be disbarred, relying on cases such as *Hamilton*, *Yeatman*, and *Attorney Grievance Commission v. Fox*, 417 Md. 504 (2010). Ms. El-Shall contends that disbarment is not warranted, arguing instead for an indefinite suspension with the right to apply for reinstatement after six months.

In *Hamilton*, as in this case, the attorney violated Rules 1.3, 1.4(a) and (b), 1.16(d), 8.1(b), and 8.4(d) by effectively abandoning her client and by failing to meaningfully participate in Bar Counsel's investigation. *See Hamilton*, 493 Md. at 53-57. However, unlike Ms. El-Shall, the attorney in *Hamilton* violated Rules 1.5(a) and 1.15(c) by failing to deposit the client's retainer into an attorney trust account, charging an unreasonable fee, and failing to refund any portion of the retainer. *See id.* at 55-56. Unlike the present case, in *Hamilton*, we found the aggravating factors of substantial experience in the practice of law, dishonest or selfish motive, and likelihood of repetition of the misconduct. *Id.* at 58-59. In addition, as noted above, the attorney in *Hamilton* failed to participate for the duration of the proceedings. *See Hamilton*, 493 Md. at 48-49, 59. Based on all these circumstances, we disbarred the attorney. *See id.* at 60. Ms. El-Shall's misconduct is not as egregious as that of the attorney in *Hamilton*.

The other disbarment cases upon which Bar Counsel relies are also distinguishable. In *Fox*, in addition to abandoning his client and failing to cooperate with attorney grievance proceedings, the attorney violated Rule 8.4(c) by making an intentional misrepresentation to his client. *See Fox*, 417 Md. at 533-34. In *Yeatman*, after defaulting in the proceedings before the circuit court, the attorney made things worse by blaming his clients for the

37

problems caused by his violations of the MARPC and complaining that his firm had not been paid its fee. *See Yeatman*, 489 Md. at 237.

Ms. El-Shall presents differently than Mr. Yeatman did. It is telling that the hearing judge in this case was "confounded" when considering the aggravating factor of likelihood of repetition of the misconduct. The record before the hearing judge suggested the presence of mental health issues. Ms. El-Shall stated that her failure to respond timely to the motion for default judgment was "due to acute mental health challenges." She also told Bar Counsel's investigator that she was suffering "with depression and anxiety especially with this investigation and [was] under the care of a therapist and physician[.]" There was no suggestion that Mr. Yeatman's misconduct may have been related to mental health challenges.

In addition, after the hearing judge issued his findings of fact and conclusions of law, Ms. El-Shall retained counsel and began to participate meaningfully in the proceedings. In doing so, she showed a seriousness of purpose and respect for the process – albeit belated – that distinguishes her from attorneys (like the respondent in *Hamilton*) who take no part in the proceedings at all.

In our view, *Attorney Grievance Commission v. Lee* and *Attorney Grievance Commission v. Kovacic* are more analogous to this case. In *Lee,* we indefinitely suspended an attorney who violated Rules 1.3, 1.4, 1.16, 3.2, 8.1(b), and 8.4(d) in connection with one client matter. 393 Md. 546, 563 (2006). We opined that "[i]ndefinite suspension from the practice of law is the proper sanction where the attorney violates [Rules] 1.3, 1.4, 8.1(b), and 8.4(d) by failing to communicate with the client and failing to cooperate with Bar

Counsel and where the attorney's conduct is not so egregious that only disbarment can adequately protect the public." *Id.* at 564-65.

In *Kovacic*, the attorney violated Rules 1.3, 1.4, and 8.1(b) by failing to communicate with her client in a divorce proceeding and failing to timely respond to Bar Counsel's inquiries. 389 Md. 233, 239 (2005). There was "neither a finding, nor any basis for mitigating the respondent's misconduct[,]" because the respondent defaulted at the evidentiary hearing stage and did not appear when the case ultimately returned to this Court. *See id.* at 235, 236-37, 239-40. We imposed the sanction of indefinite suspension even though the attorney had no prior disciplinary history. *Id.* at 240.

In this case, as in *Lee* and *Kovacic*, we conclude that an indefinite suspension is the appropriate sanction. Ms. El-Shall effectively abandoned three clients and repeatedly failed to respond to Bar Counsel's inquiries. At the hearing in this Court, when asked for Petitioner's position concerning an appropriate sanction if the Court opted not to disbar Ms. El-Shall, Petitioner recommended an indefinite suspension with the right to apply for reinstatement after two years. As stated above, Ms. El-Shall recommends an indefinite suspension with the right to seek reinstatement after six months.

Dr. Tellefsen's reports suggest that Ms. El-Shall might have established the existence of the mitigating factors of personal or emotional problems and a mental disability or chemical dependency if Ms. El-Shall had participated in the evidentiary hearing. However, even if we were to credit everything in Dr. Tellefsen reports, we would conclude that Ms. El-Shall is not ready to resume the practice of law and that an indefinite suspension is necessary to protect the public. We decline to provide a specific time after

39

which Ms. El-Shall may petition for reinstatement. We have no way to predict when Ms. El-Shall may regain the necessary fitness to practice law.

Given that Ms. El-Shall has alleged "acute mental health challenges[,]" we shall include as a condition to reinstatement that Ms. El-Shall demonstrate, by a report of a health care professional pre-approved by Bar Counsel, that she is mentally and physically competent to resume the practice of law. Any disagreement between Ms. El-Shall and Bar Counsel over the approval of such mental health care professional shall be decided by this Court. *See Taniform*, 482 Md. at 326. In addition, Ms. El-Shall shall engage an attorney monitor for a one-year period upon reinstatement to the practice of law in Maryland.[16]

## VI

## Conclusion

For the reasons discussed above, we conclude that Ms. El-Shall violated Rules 1.3, 1.4(a) and (b), 1.16(d), 8.1(b), and 8.4(a) and (d). We suspend Ms. El-Shall indefinitely from the practice of law in Maryland, effective as of the date of issuance of this opinion. Any petition for reinstatement that Ms. El-Shall files must include a report of a health care professional pre-approved by Bar Counsel demonstrating that Ms. El-Shall is mentally and physically competent to resume the practice of law. In addition, if Ms. El-Shall intends to resume a solo practice, her petition for reinstatement will need to include an agreement

---

[16] If Ms. El-Shall will not be returning to solo practice, but rather will join a law firm or other organization where her work will be supervised by a member of the Maryland Bar, she will be relieved of the requirement to engage a practice monitor upon reinstatement.

under which a qualified member of the Maryland Bar agrees to serve as Ms. El-Shall's practice monitor for one year.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SARA MOHAMED SAMY EL-SHALL.**